UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| VICKI UMBRINO and RICHARD ZOLLER, *on behalf of themselves and all other employees similarly situated,*<br><br>*Plaintiffs,*<br><br>v.<br><br>L.A.R.E PARTNERS NETWORK, INC. d/b/a L.A.R.E. PARTNERS f/k/a LIST ASSIST REAL ESTATE, INC., REAL AGENT PRO, LLC f/k/a L.A.R.E. MARKETING LLC, L.A.R.E. PROPERTIES, LLC, LIST-ASSIST OF ROCHESTER, LLC, and ISAIAH COLTON,<br><br>*Defendants.* | CLASS AND COLLECTIVE ACTION COMPLAINT<br>AND DEMAND FOR JURY TRIAL<br><br>Civil Action No.<br><br>_____ |

## NATURE OF CLAIM

1. This is a proceeding for injunctive and declaratory relief, monetary damages and equitable relief to redress the deprivation of rights secured to plaintiffs Vicki Umbrino and Richard Zoller individually, as well as all other employees similarly situated, under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq*. ("FLSA"); and the New York Labor Law ("NYLL").

## JURISDICTION AND VENUE

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343 (3) and (4) conferring original jurisdiction upon this Court of any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights; under 28 U.S.C. § 1337 conferring jurisdiction of any civil action arising under any Act of Congress regulating interstate commerce; under the Declaratory Judgment Statute, 28 U.S.C. § 2201; and under 29 U.S.C. § 216(b).

3. This Court's supplemental jurisdiction of claims arising under the NYLL is also invoked.

4. Venue is appropriate in the Western District of New York since the allegations arose in this district, Defendants do business in this district and the Plaintiffs reside in this district.

## PARTIES

**A.   Defendants**

5. Defendants L.A.R.E. Partners Network, Inc. d/b/a L.A.R.E Partners f/k/a List Assist Real Estate, Inc. Real Agent Pro, LLC f/k/a L.A.R.E. Marketing LLC, L.A.R.E. Properties, LLC, and List-Assist of Rochester, LLC (collectively "Defendants") are related entities that are operated by Isaiah Colton and are in the business of generating leads and listing appointments for clients who are qualified real estate agents.

6. Defendant L.A.R.E. Partners Network, Inc. is a New York corporation with a principal place of business at 343 State Street, Suite 1002, Rochester, New York.

7. L.A.R.E. Partners Network, Inc. also does business as L.A.R.E. Partners and is also formerly known as List Assist Real Estate, Inc.

8. Defendant Real Agent Pro, LLC is a New York limited liability company with a principal place of business at 343 State Street, Suite 1002, Rochester, New York 14650.

9. Real Agent Pro, LLC is formerly known as L.A.R.E. Marketing, LLC.

10. Real Agent Pro, LLC is a wholly-owned subsidiary of Defendant L.A.R.E. Partners Network, Inc.

11. Defendant L.A.R.E. Properties LLC is a New York limited liability company with a principal place of business of 343 State Street, Rochester, New York 14650.

12. Defendant List-Assist of Rochester, LLC is a New York limited liability company with a principal place of business of 343 State Street, Rochester, New York 14650.

13. At all times relevant hereto, Plaintiffs were "employees" of Defendants as defined by the NYLL § 651 and the FLSA, 29 U.S.C. § 203(d).

14. At all times relevant hereto, Defendants are "employer[s]" as defined in the NYLL § 651 and the FLSA, 29 U.S.C. § 203(d).

15. Defendants are an enterprise engaged in interstate commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

16. Defendants' employees are engaged in interstate commerce, and their annual gross volume of sales made or business done exceeds $500,000, exclusive of excise taxes.

*Defendants Are a Single Integrated Enterprise*

17. Together Defendants constitute a single, integrated enterprise.

18. Defendants constitute a single, integrated enterprise because they share common management, their operations are interrelated, and control over human resources and labor relations is centralized.

19. Defendants form a single integrated enterprise because they share common management.

20. For example, Isaiah Colton is the President of each of the Defendants.

21. Defendants form a single integrated enterprise because their operations are interrelated.

22. For example, Defendants all have a principal place of business of 343 State Street, Rochester, New York 14650.

23. Defendants share a single payroll system.

24. Defendants also pay expenses through a checking account that is shared amongst all Defendants.

25. Defendants share the same email, phone, and information technology services.

26. Defendants hold joint, company-wide meetings.

27. Defendants also share employees and have employees perform work for all of Defendants.

28. Furthermore, Defendants form a single integrated enterprise because their control over human resources and labor relations is centralized.

29. For example, Defendants had a single Director of Human Resources for all Defendants.

30. Defendants also utilize a common employment agreement and have a single policy and procedures manual.

31. Accordingly, Defendants constitute a single integrated enterprise and the employer of Plaintiffs.

*Isaiah Colton*

32. Defendant Isaiah Colton is the founder and operator of all of the Defendants.

33. Mr. Colton's responsibilities include actively managing Defendants.

34. At all relevant times, Mr. Colton had the power to hire and fire employees, control the terms and conditions of their employment, determine the rate and method of their compensation, and maintains employment records.

35. Mr. Colton, in concert with others, has the authority to and does make decisions that concern Defendants' operations, including functions related to employment, human resources, payroll and benefits.

36. For example, Mr. Colton was actively involved in the creation and enforcement of the illegal policies complained of in this case.

37. Therefore, Mr. Colton is liable to Plaintiffs because of his active role in operating the business, his status as an employer and/or according to federal or state law.

**B.    Plaintiffs**

*Named Plaintiffs*

38. At all relevant times, Vicki Umbrino and Richard Zoller ("Named Plaintiffs") were employees of defendants under the FLSA and NYLL, within this District and reside within this District.

39. Named Plaintiff Umbrino was employed by Defendants as a Business Development Specialist from approximately October 2015 to October 2016.

40. Based on her schedule and with the exception of holidays and vacations, Plaintiff Umbrino would arrive to work at approximately 7:50 a.m. each day to prepare for an 8:00 a.m staff meeting. During the first six months of her employment, Plaintiff Umbrino would stay until approximately 5:30 p.m. when her farther-in-law picked her up from work two weekdays a week, and would work until 7:30 p.m. during the remaining three weeknights. For the remaining six months of her employment (and after Defendants moved to their downtown location), Plaintiff Umbrino worked until approximately 5:00 p.m. two nights per week and until approximately 7:30 p.m. three nights per week. Plaintiff Umbrino worked through her half hour unpaid meal break each day.

41. Therefore, not including the time that she worked on weekends, Plaintiff Umbrino therefore worked approximately 54 hours and 20 minutes each week for the first six months of her employment, and for approximately 53 hours and 20 minutes each week for the remainder

of her employment.

42. In addition to this time, Plaintiff Umbrino also worked approximately three Saturdays each month, for five hours each time.

43. Therefore, Named Plaintiff Umbrino worked between approximately 59-60 hours a week for three out of the four weeks each month.

44. Throughout her tenure with Defendants, Named Plaintiff Umbrino was paid a salary of approximately $600 per week.

45. Despite regularly working over 40 hours each workweek, as described above, Named Plaintiff Umbrino was not compensated at time and a half her regular hourly rate of pay for the hours she worked in excess of 40 in a workweek.

46. Defendants repeatedly represented to Named Plaintiff Umbrino and all of their employees that they did not pay overtime.

47. Named Plaintiff Umbrino was not provided a Wage Theft Prevention Act notice as required under the New York Labor Law at her time of hire.

48. Named Plaintiff Richard Zoller worked for Defendants from approximately July 2014 to July 2016.

49. From approximately July 2014 to August 15, 2014, Named Plaintiff Zoller worked as a business development specialist. From approximately August 15, 2014 to July 2016, Mr. Zoller was employed as Defendants' Director of Operations.

50. Named Plaintiff Zoller regularly worked over 40 hours each week.

51. As just some examples of the times that he worked overtime, Named Plaintiff Zoller worked 44 hours the week ending July 19, 2014; 44 hours the week ending July 26, 2014; 47.75 hours the week ending August 2, 2014; 48.5 hours the week ending August 9, 2014; and

43.25 hours the week ending August 16, 2014.

52. Named Plaintiff Zoller thereafter continued to work over 40 hours a week for the duration of his employment.

53. Despite regularly working over 40 hours each workweek, Named Plaintiff Zoller was not compensated at time and a half her regular hourly rate of pay for the hours he worked in excess of 40 in a workweek.

54. Named Plaintiff Umbrino was not provided a Wage Theft Prevention Act notice as required under the New York Labor Law at her time of hire.

## FACTUAL BACKGROUND

*Defendants Failure to Pay Overtime to Inside Sales Employees*

55. Defendants' policy and practice has been not to pay overtime compensation to their non-exempt inside sales employees for hours worked in excess of forty (40) hours per workweek.

56. Defendants' inside sales employees hold the job titles including, but not limited to, Client Fulfillment Specialist, Client Fulfillment Coordinator, Business Development Specialist, and Business Development Coordinator.

57. Defendants were aware that their employees regularly worked more than 40 hours in a workweek because Defendants monitored employees' productivity and observed employees working over 40 hours in a workweek.

58. Defendants, including Isaiah Colton, were also aware of complaints from employees that they were not being paid overtime for performing inside sales activities.

59. In approximately early 2015, Named Plaintiff Zoller also provided a memo to Mr. Colton indicating that Defendants' inside sales employees should be paid on a hourly basis and

overtime for any hours over 40 in a workweek.

60. Despite allowing employees to regularly perform overtime work, Defendants indicated their policy was to pay employees engaged in inside sales on a salary basis.

61. Even though Defendants knew that Named Plaintiffs and class members were performing overtime work, they did not pay Named Plaintiffs and class members for this work.

62. Defendants' failure to pay overtime as required by the FLSA and NYLL was willful.

63. Defendants knew Named Plaintiffs and class members were supposed to be paid for all hours worked including statutory overtime.

64. However, Defendants willfully failed to pay wages including statutory overtime for all hours worked including when Plaintiffs and class members worked over forty (40) hours in a week.

65. Defendants' practice is to be deliberately indifferent to these violations of the statutory overtime requirements.

66. As a result of Defendants' unlawful pay practices, Named Plaintiffs and class members suffered a loss of wages.

*Improper Wage Notices*

67. Since the enactment of the WTPA in April 2011, pursuant to NYLL § 195, Defendants have been required to provide Named Plaintiffs and class members with a yearly notice, at the time of hiring when newly hired, and on or before February first of each subsequent year of employment, containing certain required information including the employee's rate of pay and the overtime rate of pay, if the employee is subject to overtime requirements.

68. Beginning in February 2015, the requirement to provide employees with a yearly

notice was eliminated but the requirement of providing a notice at the time of hiring remained.

69. Defendants failed to provide Named Plaintiffs Umbrino and Zoller and the Class Members with any wage notices containing their rate of pay, allowances, or overtime rate of pay.

70. Therefore, Defendants violated NYLL § 195.

*Named Plaintiff Zoller's Individual Claims*

71. As noted above, Named Plaintiff Zoller was paid on a salary basis from approximately August 16, 2014 to July 2016 when he was employed as Defendants' Director of Operations.

72. From December 31, 2013 to December 30, 2014, New York State required employers to pay employees a weekly salary of at least $600.00 per week in order for an employee to be properly classified as exempt from overtime under the executive and administrative exemptions, assuming the employee otherwise met the job duties under those exemptions.

73. From December 31, 2014 to December 30, 2015, New York State required employers to pay employees a weekly salary of at least $656.25 per week in order for an employee to be properly classified as exempt from overtime under the executive and administrative exemptions, assuming the employee otherwise met the job duties under those exemptions.

74. From December 31, 2015 to December 30, 2016, New York State required employers to pay employees a weekly salary of at least $675.00 per week in order for an employee to be properly classified as exempt from overtime under the executive and administrative exemptions, assuming the employee otherwise met the job duties under those

exemptions.

75. From approximately August 16, 2014 to November 7, 2015, Mr. Zoller was paid a salary of $500.00 per week.

76. From approximately November 8, 2015 to February 27, 2016, Named Plaintiff Zoller was paid a salary of $550.00 per week.

77. From approximately February 28, 2016 to July 2016, Named Plaintiff Zoller was paid a salary of $577.00 per week.

78. Throughout Named Plaintiff Zoller's employment, Defendants failed to pay Named Plaintiff Zoller the minimum weekly salary required by New York to properly classify Named Plaintiff Zoller as exempt from overtime under the applicable exemptions.

79. In approximately October 2016, Named Plaintiff Zoller filed a complaint with the New York State Department of Labor regarding his unpaid overtime.

80. In approximately October 2017, Named Plaintiff Zoller, Defendants, and the New York State Department of Labor partially settled his wage complaint.

81. However, that settlement was only for partial back wages of the amounts due to Named Plaintiff Zoller and did not include the full damages that Plaintiff Zoller is entitled to as provided for under the New York Labor Law.

82. Named Plaintiff Zoller therefore seeks overtime and liquidated damages for the hours that he has not been paid.

## **COLLECTIVE ACTION ALLEGATIONS**

83. Named Plaintiff Umbrino bring this action on behalf of herself and all other similarly situated employees as authorized under 29 U.S.C. § 216(b). The employees similarly situated for purposes of the collective action are:

> All of Defendants' current and former inside sales employees who in the last three years worked in excess of forty (40) hours in one or more workweeks during that time period, who elect to opt in to this action and who were suffered or permitted to work by Defendants and not paid statutory overtime for hours worked over 40 per week in violation of the FLSA.

84. Defendants knowingly and willfully operated their business with a policy not to pay overtime for hours worked over 40 in a workweek to Named Plaintiff Umbrino and other similarly situated employees in violation of the FLSA.

85. Similarly situated employees are known to Defendants and readily identifiable by Defendants through Defendants' payroll records.

86. Therefore, Named Plaintiff Umbrino should be permitted to bring this action as a collective action for and on behalf of those employees similarly situated pursuant to the opt-in provision of the FLSA, 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

87. Named Plaintiffs and class members' claims that arise under NYLL are properly maintainable as a class action under Federal Rule of Civil Procedure 23 ("Rule 23").

88. Named Plaintiffs seek to certify two separate Rule 23 classes as follows:

   a. **Class 1** includes current and former inside sales employees of Defendants during the period going back six years prior to the filing of this action through the entry of final judgment in this matter who were suffered or permitted to work over 40 in a workweek and not paid statutory overtime for hours worked over 40 in a workweek.

   b. **Class 2** includes all current and former employees of Defendants during the six years prior to the date of the filing of this action through the entry of final judgment in this matter, did not receive wage notices as required under the New York Wage Theft Prevention Act.

89. The class action is maintainable under subsections (1), (2), (3) and (4) of Rule 23(a).

90. The size of each class is believed to be over 50 employees.

91. The Named Plaintiffs will adequately represent the interests of the class members because they are similarly situated to the class members and their claims are typical of, and concurrent to, the claims of the other class members.

92. There are no known conflicts of interest between the Named Plaintiffs and the other class members.

93. The class counsel, Thomas & Solomon LLP, is qualified and able to litigate the class members' claims.

94. Class counsel practices in employment litigation, and their attorneys are experienced in class action litigation, including class actions arising under federal and state wage and hour laws.

95. The class action is maintainable under subsection (2) of Rule 23(b) because plaintiffs seek injunctive relief requiring Defendants to properly pay Named Plaintiffs and class members for all hours worked in excess of 40 hours per week at the statutorily required premium rates and requiring Defendants to provide proper wage notices as required by the WTPA.

96. The class action is maintainable under subsection (3) of Rule 23(b) because common questions of law and fact predominate among the class members and the class action is superior to other available methods for the fair and efficient adjudication of the controversy. Common questions of law and fact predominate in this action because the claims of class members are based on whether Defendants' policy and practice of failing to pay non-exempt employees for all hours worked and/or statutory overtime for hours worked over 40 per week violates NYLL and also whether Defendants' failure to provide proper wage notices violates

NYLL.

97. The class action is also maintainable under Rule 23(c)(4) because resolution of common issues will significantly advance the litigation or entitle Plaintiffs to injunctive relief.

### FIRST CAUSE OF ACTION
*FLSA*

98. Named Plaintiffs and class members reallege the above paragraphs as if fully restated herein.

99. Defendants willfully violated their obligations under the FLSA and are liable to Named Plaintiffs and class members.

### SECOND CAUSE OF ACTION
*New York Labor Law*

100. Named Plaintiffs and class members reallege the above paragraphs as if fully restated herein.

101. As a direct and proximate cause of Defendants' acts, including Defendants' failure to act in good faith, Defendants willfully violated the NYLL, and Named Plaintiffs and class members have suffered damages pursuant to N.Y. LAB. LAW § 191 *et seq.*, including N.Y. LAB. LAW §§ 191, 193, 198, N.Y. LAB. LAW §§ 650 *et seq.,* and N.Y. COMP. CODES R. & REGS. § 142-2.2.

### THIRD CAUSE OF ACTION
*New York Labor Law—Wage Notice Violations*

102. Named Plaintiffs and class members reallege the above paragraphs as if fully restated herein.

103. The notice provisions of the Wage Theft Prevention Act, Article 6 of the NYLL and its supporting regulations apply to Defendants, and protect Named Plaintiffs and class members.

104. From April 2011 through 2014, NYLL § 195-1(a) required Defendants to provide Named Plaintiffs and Class Members with a yearly notice, at the time of hiring, and on or before February first of each subsequent year of employment, containing certain required information including the employee's rate of pay and the overtime rate of pay, if the employee is subject to overtime requirements.

105. Effective February 27, 2015, the yearly notice requirement was eliminated but Defendants are still required to provide Named Plaintiffs and Class Members with a notice at the time of hiring.

106. Defendants have failed to comply with the notice provisions of the Wage Theft Prevention Act, and more specifically NYLL § 195-1.

107. Due to Defendants' violations of the NYLL, Named Plaintiffs and Class Members are entitled to recover from Defendants the sum of $50 per day, up to a total of $5,000 per employee, as provided for by NYLL Article 6, § 198(1-b).

## FOURTH CAUSE OF ACTION
*New York Labor Law—Untimely Payment of Wages*

108. Named Plaintiffs and class members reallege the above paragraphs as if fully restated herein.

109. The wage provisions of Article 6 of the NYLL, specifically NYLL § 191 and its supporting regulations, apply to Defendants and protect Named Plaintiffs and class members.

110. Defendants have repeatedly failed to pay Named Plaintiffs and class members wages, including overtime, to which they are entitled under the NYLL in a timely manner consistent with NYLL § 191.

111. Through their knowing or intentional failure to pay Named Plaintiffs and class members overtime wages in a timely manner, Defendants have willfully violated NYLL Article

19, §§ 650 *et seq.* and the supporting New York State Department of Labor Regulations.

112. Due to Defendants' violations of the NYLL, Named Plaintiffs and class members are entitled to recover from Defendants the amount of the unpaid wages and an additional amount as liquidated damages for all wages not paid in a timely manner, as provided for by NYLL Article 6, § 198, as well as reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

### FIFTH CAUSE OF ACTION
*New York Labor Law—Failure to Maintain Records*

113. Named Plaintiffs and class members reallege the above paragraphs as if fully restated herein.

114. Defendants failed to comply with NYLL § 195 which sets out notice and record keeping requirements governing employers in the State of New York, and 12 NYCRR § 142-2.6 governing the records which Defendants are required to maintain and preserve. Defendants' failure to comply with these provisions of the NYLL, as set forth above, prejudices Named Plaintiffs and class members in learning of their legal rights and Defendants' violations of the law and in asserting their legal right to be paid in accordance with the law.

115. In light of Defendants' longstanding and ongoing violations of New York Labor Laws and applicable regulations with respect to notice and recordkeeping, Named Plaintiffs and class members also seek injunctive relief precluding Defendants from continued violations of these laws and affirmatively mandating their compliance with the provisions of the NYLL.

116. Defendants' failure to comply with the NYLL caused Named Plaintiffs and class members to suffer loss of wages and interest thereon.

117. Defendants' failure to comply with the NYLL was willful.

### SIXTH CAUSE OF ACTION

*New York Labor Law—Richard Zoller Individually*

118. Named Plaintiff Zoller realleges the above paragraphs as if fully restated herein.

119. Defendants failed to pay Named Plaintiff Zoller the statutory minimum weekly salary under New York law to properly classify him as exempt from overtime.

120. Defendants' resulting violation of the NYLL was willful and not done in good faith.

121. Named Plaintiff Zoller therefore seeks back wages and liquidated damages as provided under New York Labor Law Section 198-1a.

**WHEREFORE**, the Named Plaintiffs and class members demand judgment against Defendants in their favor and that they be given the following relief:

(a) an order preliminarily and permanently restraining Defendants from engaging in the aforementioned pay violations;

(b) an award of the value of Named Plaintiffs' and class members' unpaid wages and overtime;

(c) liquidated damages under the FLSA equal to the sum of the amount of wages and overtime which were not properly paid to Named Plaintiff Umbrino and class members;

(d) under N.Y.LAB. LAW § 198, an additional amount as liquidated damages equal to one hundred percent of the total amount of wages found to be due;

(e) under N.Y.LAB. LAW § 198, damages, for each Named Plaintiff and class member, in the amount of fifty dollars for each day that Defendants failed to provide Named Plaintiffs and class members with a proper wage notice, not to exceed a total five thousand dollars;

(f) under N.Y.LAB. LAW § 198, liquidated damages owed to Named Plaintiff Zoller;

(g) an award of reasonable attorneys' fees, expenses, expert fees and costs incurred in vindicating Named Plaintiffs' and class members' rights;

(h) an award of pre- and post-judgment interest;

(i)  the amount equal to the value that would make Named Plaintiffs and class members whole for the violations; and

(j)  such other and further legal or equitable relief as this Court deems to be just and appropriate.

## **JURY DEMAND**

Plaintiffs demand a jury to hear and decide all issues of fact in accordance with Federal Rule of Civil Procedure 38(b).

Dated: July 26, 2019

                                  **THOMAS & SOLOMON LLP**

                By:   /s Jonathan W. Ferris
                       Michael J. Lingle, Esq.
                       Jonathan W. Ferris, Esq.
                       693 East Avenue
                       Rochester, New York 14607
                       Telephone: (585) 272-0540
                       mlingle@theemploymentattorneys.com
                       jferris@ theemploymentatorneys.com

                       *Attorneys for Plaintiffs*