UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

VICKI UMBRINO, *et al*.,

                Plaintiffs,

      v.

L.A.R.E PARTNERS NETWORK, INC., *et al*.,

               Defendants.
_____

**DECISION AND ORDER**

6:19-cv-06559 EAW

## <u>INTRODUCTION</u>

Plaintiffs Vicki Umbrino ("Umbrino") and Richard Zoller ("Zoller") (collectively "Named Plaintiffs") commenced this putative class and collective action on July 26, 2019, asserting violations of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 *et seq*. (the "FLSA") and the New York Labor Law (the "NYLL") by defendants L.A.R.E. Partners Network, Inc. d/b/a L.A.R.E Partners f/k/a List Assist Real Estate, Inc. ("L.A.R.E. Partners"), Real Agent Pro, LLC f/k/a L.A.R.E. Marketing, LLC ("Real Agent Pro"), L.A.R.E. Properties, LLC ("L.A.R.E. Properties"), List-Assist of Rochester, LLC ("List-Assist"), and Isaiah Colton ("Colton") (collectively "Defendants"). (Dkt. 1). Upon stipulation of the parties (Dkt. 12), the Court conditionally certified the matter as a collective action under the FLSA on February 28, 2020. (Dkt. 13).

Currently before the Court are: (1) Named Plaintiffs' motion to certify the matter as a class action pursuant to Federal Rule of Civil Procedure 23 (Dkt. 68); (2) Defendants' cross-motion to decertify the FLSA collective action (Dkt. 72); and (3) Named Plaintiffs'

motion for partial summary judgment (Dkt. 90)[1].  For the reasons that follow, the Court grants in part and denies in part Named Plaintiffs' motion for partial summary judgment, grants in part and denies in part Named Plaintiffs' motion for class certification, and denies Defendants' motion to decertify the FLSA collective action.

## BACKGROUND

### I.    Factual Background

The facts set forth below are taken from the complaint (Dkt. 1); Named Plaintiffs' Local Rule 56 Statement of Material Facts submitted in support of their motion for partial summary judgment (Dkt. 90-2) and Defendants' response thereto (Dkt. 107-1); and the exhibits submitted by the parties.  Relevant factual disputes have been noted by the Court.

At the outset, the Court acknowledges that the parties dispute whether Named Plaintiffs are former employees of all Defendants or solely of Real Agent Pro, with Named Plaintiffs taking the former position and Defendants taking the latter.  (*See* Dkt. 90-2 at ¶ 1; Dkt. 107-1 at ¶ 1).  It is undisputed that Real Agent Pro operates in the real estate industry and provides services to real estate agents, whom it matches with individuals looking to sell

---

[1]     The following motions are also pending in this action: (1) Defendants' motion to dismiss the claims of opt-in plaintiff Hajarah Conyers due to a failure to participate in discovery (Dkt. 98); (2) Named Plaintiffs' motion to strike certain of  Defendants' affirmative defenses (Dkt. 109); and (3) Defendants' cross-motion for leave to file an amended answer (Dkt. 114).  The first of these motions has been referred to United States Magistrate Judge Marian W. Payson for issuance of a report and recommendation.  (Dkt. 99).  The second and third involve matters that are distinct from those addressed in this Decision and Order and will be decided by the Court in due course.

their homes.  (Dkt. 90-2 at ¶ 3; Dkt. 107-1 at ¶ 3).  Real Agent Pro's goal was to be "a Zillow for sellers" and to generate leads for real estate agents.  (Dkt. 90-2 at ¶ 4; Dkt. 107-1 at ¶ 4).

Named Plaintiffs contend that Defendants do not sell any services directly to homeowners and that "[h]omeowners who want to sell their homes are the product to be delivered to defendants' real estate agent-clients."  (Dkt. 90-2 at ¶ 8).  Defendants dispute this characterization, again asserting that it was only Real Agent Pro that contracted with the real estate agents and further that in 2017 and 2018 Real Agent Pro sold homeowners a "Mega Agent Pro subscription for access to education services."  (Dkt. 107-1 at ¶ 8).

Named Plaintiffs were employed as "inside sales employees" by at least Real Agent Pro.  (*See* Dkt. 1 at ¶¶ 39, 49, 56).  Named Plaintiffs claim that they regularly worked more than 40 hours in a workweek without being paid overtime compensation.  (*See id*. at ¶¶ 39-45, 48-53).  Named Plaintiffs further claim that they were not provided with wage notices as required by NYLL § 195, which is part of New York's Wage Theft Prevention Act ("WTPA").  (*See id*. at ¶¶ 67-70).

The parties disagree regarding the extent of Colton's role with the business entity defendants.  They agree that Colton helped start the businesses and has served as Chief Executive Officer ("CEO") of the business entity defendants.  (Dkt. 90-2 at ¶ 13; Dkt 107-1 at ¶ 13).  It is further undisputed that Colton "provided strategic oversight to the various defendants" and, as to Real Agent Pro, "directly supervised the managers, including operations, controller and vice president of sales."  (Dkt. 90-2 at ¶ 14; Dkt. 107-1 at ¶ 14).  The parties also do not dispute that Colton "served as a sales director as the company started, and then on an as-needed basis," and that "early on" he "directly supervised inside sales

employees, and after the company grew, he supervised the managers responsible for supervising the inside sales employees." (Dkt. 90-2 at ¶¶ 16-17; Dkt. 107-1 at ¶¶ 16-17).

However, Defendants dispute Named Plaintiffs' contention that Colton was involved in the hiring process for inside sales employees, maintaining that while he "occasionally referred an individual for hire, Real Agent Pro did not necessarily hire them." (Dkt. 107-1 at ¶ 18). Defendants further contend that "only on very rare, infrequent occasions (almost all prior to 2016) did [Colton] sit in on inside sales applicants' employment interviews, but did not make the decision on whether to hire an applicant." (*Id*.). According to Defendants, "Colton did not approve, or otherwise have involvement in, terminations of inside sales employees." (*Id*.).

Named Plaintiffs claim that Colton "helped train inside sales employees, evaluated their performance and was involved with disciplining employees." (Dkt. 90-2 at ¶ 21). Defendants dispute this claim, maintaining that Colton "rarely conducted formal training of inside sales employees" and "did not have direct involvement in performance evaluations or discipline of inside sales employees." (Dkt. 107-1 at ¶ 21). Defendants further deny Named Plaintiffs' claim that "Colton monitored employees' performance, asking them if they were working Saturdays or staying late, or directing employees to work more, if they were not meeting their goals." (Dkt. 90-2 at ¶ 22; Dkt. 107-1 at ¶ 22). According to Defendants, "[i]f an [inside sales employee] worked at home, on the weekends, or outside of normal work hours, then they decided to do so on their own accord without . . . Colton's encouragement, directive, or request." (Dkt. 107-1 at ¶ 9).

The parties also disagree regarding Colton's role in setting policies and determining employee pay. Defendants state that Colton "did not create, draft, or revise Real Agent Pro's employment policies, including the Employee Handbook" and that he does not even "recall ever reviewing them before their implementation." (Dkt. 107-1 at ¶ 23). Defendants further state the Colton "only reviewed or approved compensation plans as a part of the executive team," "did not have exclusive authority to approve compensation plans," and "did not directly review or approve [inside sales employees'] commissions and bonuses distributed in the normal course of business." (Dkt. 107-1 at ¶ 24).

Defendants further dispute the following claims by Named Plaintiffs: (1) Colton made the decision to revoke an employee's stock award; (2) Colton directed the human resources manager "to actively engage in employee recognition, and he made decisions on what benefits to provide to employees"; (3) Colton decided when the office would be closed for holidays; (4) Colton decided not to pay inside sales employees overtime; and (5) Colton maintained and reviewed personnel files. (Dkt. 90-2 at ¶¶ 26-29, 31; Dkt. 107-1 at ¶¶ 26-29, 31).

## II.   **Procedural Background**

Named Plaintiffs commenced the instant action on July 26, 2019. (Dkt. 1). Defendants failed to timely file an answer. (*See* Dkt. 5).

On October 16, 2019, Named Plaintiffs filed a motion for conditional certification of the matter as a collective action under the FLSA. (Dkt. 4). Named Plaintiffs requested Clerk's entries of default on December 17, 2019, and the same were entered by the Clerk of Court's office on December 18, 2019. (Dkt. 6; Dkt. 7).

On February 24, 2020, the parties entered a stipulation whereby they agreed, among other things, that: (1) the Clerk's entries of default as to each of Defendants would be vacated; and (2) Defendants would not oppose Named Plaintiffs' motion for conditional certification. (Dkt. 12). The Court so-ordered the parties' stipulation on February 28, 2020. (Dkt. 13).

Defendants filed an answer to the complaint on March 24, 2020. (Dkt. 15). Defendants' answer did not assert as an affirmative defense the "retail or service" exemption to the FLSA's and NYLL's overtime requirements. *See* 29 U.S.C. § 207(i) ("No employer shall be deemed to have violated . . . [29 U.S.C. § 207(a)] by employing any employee of a retail or service establishment for a work week in excess of . . . [40 hours], if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly . . . [wage], and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services."); 12 N.Y.C.R.R. § 142-2.2 ("An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in and subject to the exemptions of sections 7 and 13 of 29 USC 201 *et seq*., the Fair Labor Standards Act of 1938, as amended. . . .").

Named Plaintiffs filed the instant motion for class certification on July 6, 2021. (Dkt. 68). Defendants filed their opposing papers and cross-motion to decertify the collective action on July 28, 2021. (Dkt. 72). Named Plaintiffs filed their reply brief in further support of their motion for class certification and their opposition to Defendants' decertification

cross-motion on August 20, 2021.  (Dkt. 80).  Defendants filed their reply brief in further support of their decertification cross-motion on September 3, 2021.  (Dkt. 89).

Named Plaintiffs filed the instant motion for partial summary judgment on September 15, 2021.  (Dkt. 90).

On October 25, 2021, Named Plaintiffs filed an amended complaint.  (Dkt. 103). Defendants' answer to the amended complaint was filed on November 16, 2021, and does include as an affirmative defense the retail or service exemption.  (Dkt. 106).

Defendants filed their opposition to Named Plaintiffs' motion for partial summary judgment on November 19, 2021.  (Dkt. 107).  Named Plaintiffs filed their reply brief in further support of their motion for partial summary judgment on December 17, 2021.  (Dkt. 112).

## DISCUSSION

I.   **Motion for Partial Summary Judgment**

As discussed further below, Defendants' opposition to Named Plaintiffs' motion for class certification and cross-motion for decertification of the FLSA collective action rests, in part, on Defendants' contention that the potential applicability of the retail or service exemption precludes a finding of commonality.  (*See* Dkt. 72-1 at 10).  However, in their motion for partial summary judgment, Named Plaintiffs ask the Court to find, among other things, that the retail or service exemption is inapplicable as a matter of law.  (*See* Dkt. 90-1 at 14-22).  Because resolution of that matter bears on the Court's analysis of the certification and decertification issues, the Court considers Defendants' motion for partial summary judgment first.

- 7 -

Named Plaintiffs seek partial summary judgment on two distinct points.  First, as noted above, they ask the Court to find as a matter of law that Defendants cannot prove the applicability of the retail or service exemption.  Second, they ask the Court to find as a matter of law that Colton was an "employer" under both the FLSA and the NYLL.  The Court considers each of these issues below.

## A.   Legal Standard

Federal Rule of Civil Procedure 56 provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court should grant summary judgment if, after considering the evidence in the light most favorable to the non-moving party, the Court finds that no rational jury could find in favor of that party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact. . . ."  *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014).  "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial."  *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or

unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)). Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). Indeed, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

### B.  Retail or Service Exemption

The FLSA requires that "employees who work more than 40 hours per week . . . be compensated for each hour worked over 40 'at a rate not less than one and one-half times the regular rate at which [they are] employed.'" *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 204 (2d Cir. 2009) (quoting 29 U.S.C. § 207(a)(1)). However, the FLSA also contains numerous exemptions to this requirement. Among them is the retail or service exemption, which applies to "any employee of a retail or service establishment . . . if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly  . . . [wage], and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services." 29 U.S.C. § 207(i). In other words, in order for the retail or service exemption to apply: (1) the employer must qualify as a "retail or service establishment"; (2) the employee must have received more than 50% of his or her income from commissions; and (3) the employee must have been paid at least one and one-half times the applicable minimum wage for all hours worked. *See Johnson v.*

*Wave Comm GR LLC*, 4 F. Supp. 3d 423, 433 (N.D.N.Y. 2014). "[A]n employer bears the burden of proving that its employees fall within an exempted category of the [FLSA]." *Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 614 (2d Cir. 1991).

"The NYLL does not, itself, require the payment of 'overtime.'" *Johnson*, 4 F. Supp. 3d at 433. However, the New York Department of Labor has promulgated a regulation providing, with exceptions not relevant here, that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in and subject to the exemptions of sections 7 and 13 of 29 USC 201 *et seq.*, the Fair Labor Standards Act of 1938, as amended[.]" 12 N.Y.C.R.R. 142-2.2. In other words, if the retail or service exemption applies, Defendants were not obligated to pay overtime wages under either the FLSA or the NYLL.

Named Plaintiffs argue that the retail or service exemption does not apply to Defendants' inside sales employees because (1) Defendants have waived the exemption defense and (2) Defendants cannot prove that they meet the definition of a retail or service establishment. (Dkt. 90-1). The Court easily disposes of the first of these arguments. It is true that as a general rule, "a claim of exemption under the FLSA is an affirmative defense that, pursuant to Fed. R. Civ. P. 8(c), must be specifically pleaded or will be deemed waived." *Schwind v. EW & Assocs., Inc.*, 357 F. Supp. 2d 691, 697 (S.D.N.Y. 2005). However, as Defendants correctly point out in their opposition papers, they asserted the retail or service exemption in their answer to the amended complaint, which is the operative pleading. (*See* Dkt. 107 at 8). "In the absence of prejudice to [the plaintiff], [a defendant] is permitted to raise related affirmative defenses in an answer to a newly amended

complaint." *GEOMC Co. v. Calmare Therapeutics, Inc.*, No. 3:14-CV-01222 (VAB), 2016 WL 6122930, at *4 (D. Conn. Oct. 19, 2016), *aff'd*, 918 F.3d 92 (2d Cir. 2019).  Here, there is no prejudice to Named Plaintiffs in Defendants' assertion of the retail or service exemption in their answer to the amended complaint.  Indeed, Named Plaintiffs do not even address the waiver argument in their reply papers.  *See Galin v. Hamada*, No. 15-CV-6992 (JMF), 2016 WL 2733132, at *3 (S.D.N.Y. May 10, 2016) ("Defendant did not renew those arguments in his reply after Plaintiff responded to them, so the Court deems them abandoned." (internal citations omitted)).  Accordingly, the Court declines to grant summary judgment on the basis of waiver.

The Court also cannot grant summary judgment as to whether any of the defendants apart from Real Agent Pro are a retail or service establishment.  As noted above, Defendants assert that the documents and testimony relied upon by Named Plaintiffs describe only Real Agent Pro's business model.  (*See, e.g.,* Dkt. 107-1 at ¶¶ 3-10, 12).  The record before the Court contains scant information[2] regarding this factual dispute and the Court cannot determine as a matter of law at this point that the defendants, other than Real Agent Pro, operated in the same industry or in the same manner as Real Agent Pro.   Accordingly, the

---

[2]     For example, Sara P. Mason, who was employed by Real Agent Pro during the time it was previously known as L.A.R.E. Marketing, LLC ("L.A.R.E. Marketing"), has submitted an affirmation in which she states vaguely that L.A.R.E. Marketing worked with unenumerated "related companies" with which it shared a "common purpose" and, "at various times[,] . . . office space, bank accounts, and centralized payroll processing." (Dkt. 90-6 at ¶ 5).  The Court cannot grant summary judgment on the basis of these sorts of conclusory statements.

Court limits its discussion of the remainder of Named Plaintiffs' argument to Real Agent Pro.

"Section 207(i) of Title 29 of the United States Code lacks guidance on what constitutes a 'retail or service establishment.'" *Johnson*, 4 F. Supp. 3d at 434. Instead, courts "apply the definition contained in a now-repealed FLSA provision, § 13(a)(2), the former 'retail or service establishment' exemption." *English v. Ecolab, Inc.*, No. 06 CIV. 5672 (PAC), 2008 WL 878456, at *2 (S.D.N.Y. Mar. 31, 2008); *see* 29 C.F.R. § 779.411 ("In order for an employee to come within the exemption from the overtime pay requirement provided by section 7(i) for certain employees receiving commissions, the employee must be employed by a retail or service establishment. The term 'retail or service establishment' is defined in section 13(a)(2) of the Act."). "Under the repealed section, a retail or service establishment was defined as an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry." *Sydney v. Time Warner Ent.-Advance/Newhouse P'ship*, No. 5:13-CV-286 FJS TWD, 2021 WL 2662047, at *4 (N.D.N.Y. Mar. 30, 2021) (citation omitted).

In this context, "services" means "services rendered by establishments which are traditionally regarded as local retail service establishments such as . . . restaurants, hotels, barber shops, repair shops, etc." 29 C.F.R. § 779.314. In addition, "the term 'retail or service establishment' as used in the [FLSA] does not encompass establishments in industries lacking a 'retail concept.'" 29 C.F.R. § 779.316. The applicable regulations further explain that a retail or service establishment is:

> [O]ne which sells goods or services to the general public. It serves the everyday needs of the community in which it is located. The retail or service establishment performs a function in the business organization of the Nation which is at the very end of the stream of distribution, disposing in small quantities of the products and skills of such organization and does not take part in the manufacturing process.

29 C.F.R. § 779.318(a).  "[T]here is no bright line rule for determining whether an establishment is a 'retail or service establishment' and a case-by-case approach is necessary in making this determination." *Schwind v. EW & Assocs., Inc.*, 371 F. Supp. 2d 560, 565 (S.D.N.Y. 2005) (citation omitted).

Named Plaintiffs contend that Real Agent Pro operates in an industry—namely, the real estate industry—that lacks a traditional retail concept and that it therefore cannot be considered a retail or service establishment.  (Dkt. 90-1 at 21).  Named Plaintiffs further contend that Real Agent Pro does not sell goods or services to the general public, does not have a store front but instead works out of an office building, does not provide goods or services used by the public for their comfort or convenience in the course of their daily lives, and is involved in manufacturing the goods and services it provides, and thus has "none of the hallmarks of a retail or service establishment." (*Id*. at 22).  Finally, Named Plaintiffs contend that Real Agent Pro is not "at the end of the stream of distribution," but is instead in the middle.  (*Id*.).

The Court agrees with Named Plaintiffs that the undisputed evidence is that Real Agent Pro operates in the real estate industry and further finds that the real estate industry lacks a retail concept.  As to the first of these findings, Real Agent Pro does not argue that it is not part of the real estate industry, nor does it point to any evidence controverting Named

- 13 -

Plaintiffs' showing in this regard.  Further, it is undisputed that Real Agent Pro's business model involved arranging appointments between real estate agents and individuals who were interested in selling or potentially selling their homes.  (*See* Dkt. 107-2 at ¶ 3).

As to the second finding, the Court notes that 29 C.F.R. § 779.317 previously set forth a non-exhaustive list of establishments that lack a retail concept.  *See Gonzalez v. Diamond Resorts Int'l Mktg., Inc*., No. 2:18-CV-00979 APG NJK, 2021 WL 6123631, at *5 (D. Nev. Dec. 27, 2021) ("The [Department of Labor ("DOL")] previously issued two companion regulations, one that listed types of businesses that had a retail concept and one that listed those that did not. 29 C.F.R. §§ 779.317, 779.320.").  However, the DOL withdrew this regulation in May of 2020.  *See Partial Lists of Establishments that Lack or May Have a "Retail Concept" Under the Fair Labor Standards Act*, 85 FR 29867-01 (May 19, 2020); *see also Gonzalez*, 2021 WL 6123631, at *5 ("The DOL rescinded both [29 C.F.R. §§ 779.317 and 779.320] in May 2020 after criticism in the courts that the lists seemed to have no analysis or rationale behind why some businesses were included on the respective lists.").  Before it was rescinded, 29 C.F.R. § 779.317 listed "real estate companies" as lacking a retail concept.  *See Davidson v. Orange Lake Country Club, Inc.*, No. 6:06-CV-1674 ORL19KRS, 2008 WL 254136, at *5 (M.D. Fla. Jan. 29, 2008).

In their opening papers, Named Plaintiffs note that 29 C.F.R. § 779.317 has been rescinded and do not suggest that the Court should apply it.  (*See* Dkt. 90-1 at 17-18).  Then, in a footnote in their reply papers, Named Plaintiffs argue that "[t]he Court may . . . still rely on 29 C.F.R. § 779.317 as it was in effect during the relevant time period, and there is no clear indication that its withdrawal was retroactive."  (Dkt. 112 at 7).  The Court will not

grant summary judgment on the basis of an argument made in reply, particularly not one relegated to a footnote.  Accordingly, the Court rejects Named Plaintiffs' belated suggestion that it should rely on 29 C.F.R. § 779.317 to conclude without further analysis that the real estate industry lacks a retail concept.

However, considering the matter on its own merits, the Court concludes that Real Agent Pro has not demonstrated a genuine issue of material fact as to whether the real estate industry has a retail concept.  The Court notes that "the question whether the industry itself falls within the retail concept of the [FLSA] is one of law—of statutory interpretation." *Brennan v. Keyser*, 507 F.2d 472, 475 (9th Cir. 1974); *see also Owopetu v. Nationwide CATV Auditing Servs., Inc.*, No. 5:10-CV-18, 2011 WL 883703, at *8 (D. Vt. Mar. 11, 2011) ("Although the statute's language suggests that the term 'retail' is to be defined solely by reference to industry standards, the Supreme Court has held that the term's meaning is a question of law to be determined by the courts, and not by the defendant or the defendant's industry." (citing *Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S. 190, 204-05 (1966))). "[T]he question of whether a particular industry can have a retail concept within the FLSA's meaning" is a "threshold inquiry" in assessing the availability of the retail or service exemption.  *Delara v. Diamond Resorts Int'l Mktg., Inc.*, No. 2:19-CV-00022 APG NJK, 2021 WL 6123563, at *5 (D. Nev. Dec. 27, 2021).

It is the burden of an employer claiming the retail or service exemption to come forward with facts supporting the conclusion that its industry has a retail concept.  *Sydney*, 2020 WL 1530793, at *4.  Here, Named Plaintiffs have pointed out a lack of evidence to support the conclusion the real estate industry has a retail concept, including by producing

evidence from the United States Census Bureau supporting the conclusion that the real estate industry lacks such a concept.  (*See* Dkt. 90-28).   In opposition, Defendants have neither produced nor pointed to anything that would support the conclusion that the real estate industry recognizes a retail concept.  *See Citizens Bank of Clearwater v. Hunt*, 927 F.2d 707, 710 (2d Cir. 1991) ("The moving party has the initial burden of demonstrating that there is no genuine issue of material fact for trial.  That burden may be satisfied by pointing out the absence of evidence to support the non-movant's claims. The non-movant then bears the burden of establishing the existence of elements essential to its case, which it would have to prove at trial." (citations omitted)).   Instead, Defendants argue that the withdrawal of  29 C.F.R. § 779.317 means that the establishments within the real estate industry are no longer *per se* excluded from claiming the retail or service exemption.  (*See* Dkt. 107 at 13-14). While this may be true, the lack of a *per se* exclusion does not relieve an employer in the real estate industry of its threshold burden of demonstrating that such industry has a retail concept.  *See e.g., Jelus v. All Creatures Animal Hosp., Inc*., No. 1:15-CV-184 (WOB), 2016 WL 3074406, at *6 (S.D. Ohio May 27, 2016) ("As a threshold requirement, the employer must be part of an industry with a retail concept."); *Selz v. Investools, Inc*., No. 2:09-CV-1042-TS, 2011 WL 285801, at *4 (D. Utah Jan. 27, 2011) ("[T]he threshold question in determining whether a business is a retail or service establishment is whether the industry lacks a retail concept." (quotations omitted)).

Further, the Court agrees with Named Plaintiffs that even assuming that the real estate industry has a retail concept, Defendants have not come forward with evidence to support the conclusion that the particular services Real Agent Pro offers would be considered by the

industry to come within that concept. *See Johnson*, 4 F. Supp. 3d at 436 (explaining that courts apply a "two-prong test" to determine "whether a defendant's business is recognized as retail": "(1) the establishment must be part of an industry in which there is a 'retail concept'; and (2) the establishment's services must be recognized as retail in that particular industry"). In determining whether an employer's "services are recognized as retail within its industry," the Court "should consider the understandings of persons with knowledge of recognized industry classifications as well as sellers, purchasers, employers, employees, and private or governmental research organizations." *Id*. at 440. Here, Defendants have not come forward with any information regarding how the relevant players within its industry would view its services. *See Owopetu*, 2011 WL 883703 at *29 (finding the defendant had "failed to meet its burden" of showing that it was a retail or service establishment because it had not "offered any evidence as to how persons in the industry and with knowledge of the industry view[ed] [its] business" (internal quotation marks omitted)). This is "an essential element" of the exemption that Real Agent Pro is trying to assert. *Id*.

In sum, the record before the Court is devoid of evidence to establish that (1) the real estate industry in which Real Agent Pro operates has a retail concept or (2) Real Agent Pro's services are viewed as retail within that industry. Real Agent Pro thus cannot establish the necessary elements of the retail or service exemption. Named Plaintiffs are entitled to summary judgment on this issue on this basis, and the Court need not and does not consider the other arguments made by the parties respecting the viability of Real Agent Pro's invocation of the retail or service exemption.

### C.      Colton's Status as an Employer

The Court turns next to Named Plaintiffs' request for summary judgment on the issue of whether Colton can be considered an employer under the FLSA and the NYLL. The Court finds, for the reasons that follow, that genuine issues of material fact preclude summary judgment on this point.

The FLSA "nowhere defines 'employer' in the first instance." *Irizarry v. Catsimatidis*, 722 F.3d 99, 103 (2d Cir. 2013). In the absence of such definition, "the [Supreme] Court has instructed that the determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in economic reality rather than technical concepts, determined by reference not to isolated factors, but rather upon the circumstances of the whole activity." *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008) (quotations omitted)). In other words, "employment for FLSA purposes [is] a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." *Id.* "[D]istrict courts in this Circuit have interpreted the definition of employer under the NYLL coextensively with the definition used by the FLSA." *Cho v. Osaka Zen Spa*, No. 19 CIV. 7935 (ER), 2021 WL 1736813, at *3 (S.D.N.Y. May 3, 2021) (original alteration omitted).

"In analyzing the question of whether a defendant is an employer, the overarching concern is whether the alleged employer possessed the power to control the workers in question." *Stewart v. Hudson Hall LLC*, No. 20 Civ. 885 (PGG) (SLC), 2020 WL 8732875, at *4 (S.D.N.Y. Oct. 19, 2020) (quotation omitted). "Several factors, known as the *Carter* factors, guide the court's analysis into whether a defendant exercised formal control[.]"

*Weng v. HungryPanda US, Inc.*, No. 19 CIV. 11882 (KPF), 2022 WL 292799, at *4 (S.D.N.Y. Jan. 31, 2022) (citing *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8 (2d Cir. 1984)). These factors include "whether the alleged employer [i] had the power to hire and fire the employees, [ii] supervised and controlled employee work schedules or conditions of employment, [iii] determined the rate and method of payment, and [iv] maintained employment records." *Carter*, 735 F.2d at 12.

Here, the Court easily finds that genuine issues of material fact exist as to whether Colton constitutes an employer for purposes of the FLSA and NYLL. In opposition to Named Plaintiffs' motion for partial summary judgment, Colton has submitted to the Court a sworn declaration in which he states that: (1) he did not have operational control over inside sales employees as CEO of Real Agent Pro; (2) he did not make hiring decisions with respect to inside sales employees; (3) he did not make termination decisions with respect to inside sales employees; (4) he did not set Real Agent Pro's employment policies; (5) he did not set work schedules for inside sales employees; (6) he lacked authority to unilaterally determine methods and rates of pay for inside sales employees; (7) he had no approval role with respect to inside sales employees' commissions and bonuses; and (8) he did not maintain employment records for Real Agent Pro. (Dkt. 107-2). In deciding Named Plaintiffs' motion for summary judgment, the Court must credit these statements by Colton.

Named Plaintiffs suggest in reply that the Court can grant their motion notwithstanding these factual disputes because Colton admits that: (1) he provided strategic oversight to Real Agent Pro; (2) he was a part of the executive team that approved compensation plans for inside sales employees; (3) he directly supervised inside sales

employees "for a period of time" and supervised managers and human resources employees; and (4) he was "an active presence in the office." (Dkt. 112 at 12-13). Named Plaintiffs argue that these facts are comparable to the facts that the Second Circuit found sufficient to support a grant of summary judgment in *Irizarry*. (*Id*.). The Court disagrees. In *Irizarry*, the individual defendant had essentially unfettered discretion over how the company was run. *See* 722 F.3d at 99 (if the individual defendant "chose to make a decision" there was no one with "the power to override him"). This included "the power to hire or fire anyone he [chose]" as well as the authority to sign paychecks. (*Id*. at 114-15). The record before the Court simply does not establish the same degree of control by Colton over Real Agent Pro. In particular, the Court has no information about the membership or functioning of the "executive team" referenced in the papers. Further, while Colton concedes that he directly supervised inside sales employees for some period of time, the Court has no information about whether this time period overlapped with Named Plaintiffs' employment.

The undisputed facts of record are not sufficient, at this point in time, to allow the Court to find as a matter of law that Colton was Named Plaintiffs' employer for purposes of the FLSA and the NYLL. The Court accordingly denies this aspect of Named Plaintiffs' motion for partial summary judgment.

## II.     Motion for Class Certification

### A.     Legal Standard

Having resolved Named Plaintiffs' motion for partial summary judgment, the Court turns next to their motion for class certification (Dkt. 68). "In determining whether class certification is appropriate, a district court must first ascertain whether the claims meet the

preconditions of [Federal] Rule [of Civil Procedure] 23(a). . . ."  *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 201-02 (2d Cir. 2008). Specifically, the Court must conclude that the proposed class meets the following requirements:

(1)     the class is so numerous that joinder of all members is impracticable;
(2)     there are questions of law or fact common to the class;
(3)     the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4)     the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).   If all these requirements are met, the Court may grant class certification where one of the scenarios set forth under Rule 23(b)(1)-(3) is satisfied.  "The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met."  *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010).

Here, Plaintiffs seek certification of their proposed classes under Rule 23(b)(1)(A) and (b)(3).  (*See* Dkt. 68-1 at 27).  Rule 23(b)(1)(A) "covers cases in which separate actions by or against individual class members would risk establishing 'incompatible standards of conduct for the party opposing the class[.]'"  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997).  "Rule 23(b)(1) does not permit a class member to opt-out of the class," and accordingly  "class actions brought under this rule are often referred to as 'mandatory' class actions."  *DiDonato v. GC Servs. Ltd. P'ship*, No. 20 CIV. 2154 (LGS), 2021 WL 4219504, at *6 (S.D.N.Y. Sept. 16, 2021).  Because this can raise due process concerns, *id*., "[c]ourts generally apply Rule 23(b)(1)(A) restrictively, to classes where there is a statutory

obligation to treat all class members alike, or when practical necessity forces the opposing party to act in the same manner toward the individual class members and thereby makes inconsistent adjudications in separate actions unworkable or intolerable," *Borgese v. Baby Brezza Enterprises LLC*, No. 20 CIV. 1180 (VM), 2021 WL 634722, at *5 (S.D.N.Y. Feb. 18, 2021) (citation omitted).

Rule 23(b)(3) provides that a class may be certified if the Rule 23(a) criteria are satisfied and if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods." Fed. R. Civ. P. 23(b)(3). This provision is intended to "secure judgments binding all class members save those who affirmatively elect[ ] to be excluded,' where a class action will 'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 454 (S.D.N.Y. 2004) (alterations in original and quoting *Amchem Prod.*, 521 U.S. at 614-15).

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prod.*, 521 U.S. at 623. "Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).

B.     **The Proposed Classes**

Plaintiffs ask the Court to certify the following two classes:

(a)     <u>Inside Sales Class</u>: [all persons] who performed insides sales work for defendants, including those who held job titles such as Business Development Specialist, Business Development Coordinator, Client Fulfillment Specialist, Client Fulfillment Coordinator, and Insides Sales Associate, at any time from July 26, 2013 through the entry of final judgment.

(b)     <u>Wage Theft Prevention Act Class</u>: all persons who worked for defendants who at any time from July 26, 2013 through the entry of final judgment in this matter, did not receive the annual written notice, when required, or notice upon hire as required under the Wage Theft Prevention Act.

(Dkt. 68-1 at 16).

C.     **Defendants' Objections to Class Certification**

Defendants oppose class certification on several grounds.  First, Defendants argue that the proposed Wage Theft Prevention Act Class (the "WTPA Class") is an impermissible fail-safe class.  (Dkt. 72-1 at 4).  Second, Defendants argue that the WTPA Class cannot be certified as proposed because "[t]he WTPA does not provide a private right of action for an employer's failure to provide required annual wage notices to its employees."  (*Id*. at 6).  Third, Defendants argue that their assertion of the retail or service exemption precludes a finding of commonality.  (*Id*. at 10).

Finally, Defendants argue that Named Plaintiffs lack standing to represent the proposed classes.  (*Id*. at 14).  More particularly, Defendants note that the proposed classes cover the period from July 26, 2013, through entry of final judgment in this matter, which "span[s] 1 year before and nearly 5 years after the Named Plaintiffs' employment with

Defendant Real Agent Pro." (Dkt. 72-1 at 14). Defendants accordingly urge the Court to "deny certification of the Rule 23 class for claims outside the dates of Named Plaintiffs' employment with Defendant Real Agent Pro." (*Id*. at 15).

Defendants' commonality argument is disposed of by the Court's grant of partial summary judgment to Named Plaintiffs on the applicability of the retail or service exemption.[3] The Court is unpersuaded by Defendants' remaining arguments, for the reasons set forth below.

### 1.   <u>Standing</u>

Because it bears on the viability of both proposed classes, the Court turns first to Defendants' standing argument. "The doctrine of standing tests whether a prospective litigant may properly invoke the power of the federal courts." *Langan v. Johnson & Johnson Consumer Companies, Inc.*, 897 F.3d 88, 93 (2d Cir. 2018). As a general rule of standing, "one person cannot litigate injuries on behalf of another." *Id*. However, class actions under Rule 23 are an exception to that general rule. *Id*. ("Through Rule 23, Congress has authorized plaintiffs to bring, under limited circumstances, a suit in federal court on behalf of, not just themselves, but others who were similarly injured."). In other words, "[a]lthough a named class action plaintiff has not actually suffered the injuries suffered by her putative class members (and therefore would not normally have standing to bring those suits),

---

[3]   While the Court declined to grant partial summary on this issue with respect to any defendant other than Real Agent Pro, that was due to factual disputes regarding the role those other defendants played in Named Plaintiffs' employment. In other words, if Named Plaintiffs are ultimately able to prove that the other defendants were also their employers, the same analysis set forth above with respect to the retail or service exemption would apply and the issue would be resolvable on a class wide basis.

Congress has said that the fact that the parties 'possess the same interest' and 'suffered the same injury' gives the named plaintiff a sufficient stake in the outcome of her putative class members' cases." *Id*. at 94 (alteration omitted and quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011)).  Nevertheless, named plaintiffs in a Rule 23 action "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 199 (2d Cir. 2005) (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)).

Some district courts in this Circuit have limited the temporal scope of class actions under the NYLL based on the employment dates of the named plaintiffs.  *See Maddison v. Comfort Sys. USA (Syracuse), Inc*., No. 5:17-CV-0359 LEK ATB, 2018 WL 679477, at *8 (N.D.N.Y. Feb. 1, 2018)  ("Plaintiff purports to represent the FLSA and Rule 23 Classes from March 30, 2011—one month before Defendant employed him—to the entry of judgment in this case—several years after May 2015, when he left Defendant's employ. Plaintiff cannot claim to have been injured by any underpayment made by Defendant to its employees before or after his dates of employment. Accordingly, Plaintiff only has standing to represent the Rule 23 and FLSA Classes regarding injuries that the putative classes incurred between May 2011 and May 2015.");  *Roach v. T.L. Cannon Corp*., No. 3:10-CV-0591 TJM DEP, 2015 WL 10818750, at *6 (N.D.N.Y. Sept. 4, 2015) ("Given the six year statute of limitations, the earliest date the class period could commence is May 19, 2004. Because Longo was the earliest employed member of the named plaintiffs with a start date

in April 2005, this is the earliest that a named plaintiff has standing to assert the claims in this matter."). However, at least one district court has rejected such an argument. *See Kinkead v. Humana at Home, Inc*., 450 F. Supp. 3d 162, 193 (D. Conn. 2020) (in considering whether to certify class under the NYLL, rejecting argument that "neither [New York] named Plaintiff Caillo nor Plaintiff Mathieu have standing to assert an unpaid hours claim prior to January 1, 2015, because neither worked in a live-in capacity prior to January 1, 2015" (alteration in original and citation omitted)). The Second Circuit has not decided the issue.

Essentially, the question the Court must decide is whether the requirement that Named Plaintiffs have suffered the same injury as the unnamed class members precludes them from asserting claims outside their own dates of employment. The Court finds that it does not. The Second Circuit has explained that the relevant inquiry in this regard is whether the defendants' conduct that allegedly injured the named plaintiffs "implicates 'the same set of concerns' as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012). Here, Defendants' alleged failure to comply with the NYLL during the course of Named Plaintiffs' employment plainly implicates the same set of concerns as Defendants' alleged failure to comply with the NYLL in precisely the same manner during the unnamed class members' employment. Accordingly, the Court does not find a lack of standing on the part of Named Plaintiffs.

### 2.      Objections Specific to the WTPA Class

Defendants have also raised two arguments specific to the WTPA Class—first, that

it is allegedly an impermissible fail-safe class and second, that it fails in part on the merits

because there is no private cause of action under the WTPA with respect to provision of

annual notices.  Neither of these arguments establish that class certification should be denied.

"A fail-safe class is one whose definition shields the putative class members from

receiving an adverse judgment."  *Hicks v. T.L. Cannon Corp.*, 35 F. Supp. 3d 329, 356

(W.D.N.Y. 2014) (quotation and alteration omitted).  In other words, "[i]n a fail-safe class,

either the class members win or, by virtue of losing, they are not in the class, and therefore

not bound by the judgment."  *Id*. at 357 (citation omitted).  Courts will not certify a proposed

fail-safe class "because it is unfair to defendants, it prevents an adverse judgment being

entered against plaintiffs, and it is unmanageable because the members of the class could

only be known after a determination of liability."  *Id*. (citation omitted).  The Court has the

discretion to redefine a proposed fail-safe class "to bring it within the scope of Rule 23."  *Id*.

(quotation and alteration omitted).

In *Hicks*, this Court considered an argument extremely similar to the one advanced

by Defendants in this case.  There, the plaintiffs had proposed two subclasses that were

defined in relevant part as employees who "were not provided wage statements listing

allowances claimed by [the employer] as required by 12 N.Y.C.R.R. §§ 137-2.2" and as

employees who "were not provided wage notices that included the tip credit as required by

12 N.Y.C.R.R. §§ 146-1.3; 146-2.2."  *Id*. at 356.  The Court found that while the defendants

were largely "placing form over substance by arguing that the proposed subclasses are fail-

safe classes," the proposed subclasses did "arguably have some fail-safe qualities[.]"  *Id*. at 357.  The Court determined that the proper result was not to deny certification entirely but to slightly redefine the proposed subclasses.  (*Id*. at 358).

Here, as in *Hicks*, the Court finds that any fail-safe concerns associated with the WTPA Class can be addressed through a slight modification of the class definition.  In particular, the WTPA Class will be redefined as "all persons who worked for defendants at any time from July 26, 2013 through the entry of final judgment in this matter, and who did not receive written notice upon hire of the information set forth in New York Labor Law § 195(1)(a) and its associated regulations, or who did not receive annual written notice of the same prior to February 27, 2015."[4]  This proposed redefinition eliminates the legal conclusion that a particular notice was or was not required by the NYLL and thus avoids any fail-safe concerns.[5]

As to Defendants' argument that there is not a private cause of action under the NYLL for failure to provide annual wage notices, there is a split of authority on this point within district courts in this Circuit.  *See Remache v. Mac Hudson Grp*., No. 14-CV-3118 AMD RML, 2018 WL 4573072, at *16 (E.D.N.Y. Sept. 7, 2018) (collecting cases reaching

---

[4]     "The annual wage-notice requirement was removed from NYLL § 195(1) effective February 27, 2015."  *Gamero v. Koodo Sushi Corp*., 272 F. Supp. 3d 481, 510 (S.D.N.Y. 2017) (quotation omitted), *aff'd*, 752 F. App'x 33 (2d Cir. 2018).

[5]     In addition, while Defendants did not raise this issue, it would not be appropriate for the Court to adopt a class definition that refers to the "Wage Theft Prevention Act" without further explanation, inasmuch as New York is not the only state with a law known as the Wage Theft Protection Act.  The Court's revised definition addresses this issue by identifying the specific New York statute at issue.

contrary conclusions as to this issue), *adopted*, 2018 WL 4568860 (E.D.N.Y. Sept. 24, 2018). However, the Court need not wade into those waters at this time, because class certification does not resolve the merits of any particular claim. *See Nestle Waters N. Am., Inc. v. City of New York*, No. 15 Civ. 05189 (ALC), 2016 WL 3080722, at *5 (S.D.N.Y. May 25, 2016) ("class certification is a procedural question, distinct from the merits of a case"). As the Supreme Court has explained, it is necessary at the class certification stage "that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013). Here, if the WTPA Class ultimately loses on the merits of any claims related to the provision of annual wage notices, it will do so as a class. Accordingly, this argument by Defendants does not provide a basis to deny class certification.

### D.     The Remaining Rule 23 Requirements

Defendants have not raised any additional objections with respect to Plaintiff's showing on the requirements of Rule 23. However, even in the absence of any such objection, the Court "has an independent obligation to consider the evidence in the record and assess whether the proposed class[es]" satisfy all of the relevant requirements. *Callari v. Blackman Plumbing Supply, Inc.*, 153 F. Supp. 3d 590, 593 (E.D.N.Y. 2015). Accordingly, the Court has performed its own assessment, which is set forth below.

### 1.     Rule 23(a) Requirements

The Court finds that the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a) are satisfied. As to numerosity, it is undisputed that the proposed

classes consist of at least 40 members. This is sufficient to establish numerosity. *See Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011).

With respect to commonality, this requirement is satisfied where an issue of law or fact is common to the class, and where a classwide proceeding is capable of "generat[ing] common answers apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 349-50 (citation omitted). "Challenges to labor policies tend to be amenable to precisely this type of class-wide proof, and as a result commonality is usually satisfied in wage cases where the plaintiffs allege that defendants had a common policy of unlawful labor practices." *Carollo v. United Cap. Corp.*, 528 F. Supp. 3d 37, 54 (N.D.N.Y. 2021) (quotation omitted). Here, as noted above, the Court's resolution of Named Plaintiffs' motion for partial summary judgment has mooted Defendants' contention that the potential applicability of the retail or service exemption does not allow for a finding of commonality. Further, Named Plaintiffs have identified multiple common questions of fact and law related to Defendants' alleged employment practices. (*See* Dkt. 68-1 at 22). Accordingly, the Court finds the commonality requirement satisfied. *See Wal-Mart*, 564 U.S. at 359 ("even a single common question" is sufficient for purposes of Rule 23(a)(2)).

As to typicality, this requirement can be satisfied by a showing that the named plaintiffs and the members of the proposed class were subject to common employment policies. *Shahriar*, 659 F.3d at 252. Here, Umbrino has submitted a sworn declaration indicating that inside sales employees were subject to uniform compensation policies. (*See* Dkt. 4-4 at ¶ 12). Zoller has similarly submitted a sworn declaration indicating the same. (*See* Dkt. 4-5 at ¶¶ 16, 19). Defendants have not controverted this assertion, but have instead

stipulated that inside sales employees "were paid under the same policies and in the same manner" and "performed their job duties under the same policies and in the same manner." (Dkt. 68-3 at 3). The Court thus finds the typicality requirement satisfied.

The Court further finds that Named Plaintiffs will fairly and adequately protect the interests of the proposed classes. In making this determination, the Court must make the following findings: "(1) the [named] plaintiffs' attorneys must be qualified, experienced and generally able to conduct the litigation, and (2) the [named plaintiffs'] interests must not be antagonistic to those of the remainder of the class." *Hicks*, 35 F. Supp. 3d at 353 (internal citation omitted). As to the first of these elements, Named Plaintiffs are represented by Thomas & Solomon, a well-established employment law firm that has prosecuted numerous wage and hour class action lawsuits. (*See* Dkt. 68-2 at ¶¶ 5-13). As to the second, Named Plaintiffs have adequately shown that they have no interests that diverge from those of the proposed classes. (*See id.* at ¶ 14); *see also Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008) ("The fact that plaintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class; the same strategies that will vindicate plaintiffs' claims will vindicate those of the class.").

Finally, while it is not expressly required by Rule 23(a), courts have imposed an implied requirement of ascertainability in considering motions for class certification. *See Hicks*, 35 F. Supp. 3d at 354. "The ascertainability doctrine that governs in this Circuit requires only that a class be defined using objective criteria that establish a membership with definite boundaries." *In re Petrobras Sec.*, 862 F.3d 250, 264 (2d Cir. 2017). The proposed

classes in this case (taking into account the Court's modification of the WTPA Class definition) satisfy this requirement.

### 2.    Rule 23(b) Requirements

The Court next considers whether Named Plaintiffs have demonstrated that the requirements of either Rule 23(b)(1)(A) or Rule 23(b) are satisfied.  As to Rule 23(b)(1)(A), Named Plaintiffs have not demonstrated that this case falls within the relatively narrow circumstances that warrant certification of a mandatory class action under that provision. Multiple federal courts have held that wage and hour class actions are not suitable for certification under Rule 23(b)(1)(A).  *See, e.g.*, *Encinas v. J.J. Drywall Corp.*, 265 F.R.D. 3, 9 (D.D.C. 2010); *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 398 (C.D. Cal. 2008), *aff'd*, 375 F. App'x 734 (9th Cir. 2010).  Moreover, this is a case in which the primary relief sought is monetary damages, and accordingly certification under Rule 23(b)(1)(A) would raise significant due process concerns.  *See DiDonato*, 2021 WL 4219504, at *6 ("Here, Plaintiff seeks only individualized monetary damages. Accordingly, certification is denied under Rule 23(b)(1)(A) because potential class members would not have the opportunity to opt-out of the class and litigate for themselves their entitlement to, and amount of, individual damages.").

However, the Court does find that the requirements of Rule 23(b)(3) are satisfied in this case.[6]  As noted above, Rule 23(b)(3) allows for class certification where "the court

---

[6]    Because the Court reaches this conclusion, it need not and does not reach Named Plaintiff's alternative argument that certification is appropriate under Rule 23(c)(4).  (*See* Dkt. 68-1 at 31-32).

finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods." Fed. R. Civ. P. 23(b)(3). The predominance requirement is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore*, 306 F.3d at 1252. "[W]hen plaintiffs are allegedly aggrieved by a single policy of defendants, . . . the case presents precisely the type of situation for which the class action device is suited since many nearly identical litigations can be adjudicated in unison." *In re: Nassau County Strip Search Cases*, 461 F.3d 219, 228 (2d Cir. 2006) (quotation omitted).

Here, as the Court has previously explained, it is undisputed that inside sales employees "were paid under the same policies and in the same manner" and "performed their job duties under the same policies and in the same manner." (Dkt. 68-3 at 3). Common issues of law and fact thus predominate, because the matter of liability can be determined on a class-wide basis with generalized proof. While there may be individualized questions as to damages, "the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification under Rule 23(b)(3)." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (quotation omitted).

As to the superiority inquiry, "Rule 23(b)(3) lists four factors that clearly implicate the superiority inquiry." *Adkins v. Morgan Stanley*, 307 F.R.D. 119, 146 (S.D.N.Y. 2015) (quotation omitted), *aff'd*, 656 F. App'x 555 (2d Cir. 2016). Those factors are: "(A) the class members' interests in individually controlling the prosecution or defense of separate

actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id.* (citation omitted). Of these factors, "the most critical issue in determining whether a class action is a superior means of adjudication is manageability." *Id.*

Here, neither side has identified any other pending litigation regarding the claims at issue in this lawsuit. This is also an appropriate forum for the claims, and the nature of the case is such that it is infeasible for each class member to individually expend the resources necessary to bring a lawsuit. Further, there is no reason to conclude that this litigation will be any less manageable than the numerous wage and hour class actions that have previously passed through this District.

For all these reasons, the Court certifies the following two classes:

(a)   Inside Sales Class: all persons who performed insides sales work for defendants, including those who held job titles such as Business Development Specialist, Business Development Coordinator, Client Fulfillment Specialist, Client Fulfillment Coordinator, and Inside Sales Associate, at any time from July 26, 2013 through the entry of final judgment in this matter.

(b)   Wage Theft Prevention Act Class: all persons who worked for defendants at any time from July 26, 2013, through the entry of final judgment in this matter, and who did not receive written notice upon hire of the information set forth in New York Labor Law § 195(1)(a) and its associated regulations, or who did not receive annual written notice of the same prior to February 27, 2015.

E.     **Notice to the Class**

Named Plaintiffs have submitted to the Court a proposed form for notice to the certified classes.  (Dkt. 68-9).  However, the Court will not approve the proposed notice as it is currently written.  In particular, the Court finds that the following language is inaccurate: "The other class consists of all employees who worked for defendants any time from July 26, 2013 to the present as a result of defendants' failure to provide wage notices."  (*Id.* at 2). Not only does this sentence not accurately describe the WTPA Class, it makes no sense grammatically, inasmuch as it indicates that it was Defendants' alleged failure to provide wage notices that caused the employees to work for Defendants.  Further, the proposed notice frequently refers to a singular "Class" notwithstanding the fact that there are two classes in this case, which is likely to confuse class members.

Rather than simply rewriting the proposed notice, the Court instead finds it appropriate to direct the parties to confer and propose a mutually acceptable form of notice. *See Hicks*, 25 F. Supp. 3d at 358 ("Courts routinely direct parties to confer and submit a jointly-acceptable form of notice in class actions." (collecting cases)).   Accordingly, the parties are directed to confer in good faith and make a joint submission to the Court proposing a single form of notice for the certified classes within twenty (20) days of entry of this Decision and Order.  In the event the parties are unable to agree on a single form of notice, they shall each submit a letter of not more than five pages setting forth any disputes and their respective positions.

F.      **Provision of Class Members' Personal Information**

Named Plaintiffs also ask the Court to "order defendants to provide plaintiffs' counsel in both electronic format (in an Excel spreadsheet) and by hard copy, a list containing the following information for each class member in a separate field: name, current or last known address, phone number, job title, dates of employment, last four digits of social security number, date of birth and e-mail address, within 15 days of the issuance of" the instant Decision and Order.  (Dkt. 68-1 at 33).  Defendants have not addressed this request by Named Plaintiffs.

The Court finds Named Plaintiffs' request for information overly broad.  Courts in this Circuit have found it inappropriate to order the production of social security numbers for notice purposes, at least unless the plaintiff "can demonstrate that names and contact information are insufficient to effectuate notice." *Wang v. Empire State Auto Corp.*, No. 14-CV-1491 WFK VMS, 2015 WL 4603117, at *15 (E.D.N.Y. July 29, 2015) (quotation omitted and collecting cases).  In the similar context of notice for potential opt-in plaintiffs in an FLSA collective actions, courts in this Circuit have also held that dates of birth and job titles are not relevant for purposes of effectuating notice. *See Cheng v. Via Quadronno LLC*, No. 20-CV-8903 (LJL), 2021 WL 4319569, at *5 (S.D.N.Y. Sept. 23, 2021) (collecting cases).  On the other hand, courts routinely order disclosure of "names, mailing addresses, email addresses, telephone numbers, and dates of employment" for notice purposes. *Id.*

Accordingly, the Court orders that Defendants provide only the names, current or last known address, phone number, dates of employment, and e-mail address as to members of the certified classes.  Because Defendants have not objected to Named Plaintiffs' formatting

request—namely, that the information be provided both in hard copy and as an Excel spreadsheet with each item of information in a separate field—or to the time frame proposed by Named Plaintiffs, those requests are granted.

**III.     Defendants' Motion for Decertification of the FLSA Collective Action**

      **A.     Legal Standard**

The Court turns finally to Defendants' motion for decertification of the FLSA collective action.  "Section 216(b) of the FLSA authorizes collective actions to recover damages for unpaid wages where all employees are 'similarly situated.'"  *Ruiz v. Citibank, N.A.*, 93 F. Supp. 3d 279, 297 (S.D.N.Y. 2015) (quoting 29 U.S.C. § 216(b)), *abrogated on other grounds by Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 518 (2d Cir. 2020). "Although they are not required to do so by FLSA, district courts have discretion, in appropriate cases, to implement [§ 216(b) of the FLSA] . . . by facilitating notice to potential plaintiffs of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) (quotation omitted). This is often referred to as certification, although as the Second Circuit observed in *Myers*, it is not "certification" in the traditional class action sense and "nothing in the text of the statute prevents plaintiffs from opting in to the action by filing consents with the district court, even when the notice . . . has not been sent, so long as such plaintiffs are 'similarly situated' to the named individual plaintiff who brought the action." *Id.* at 554 n.10.

District courts in this Circuit apply a two-step method for determining whether to exercise their discretion under § 216(b):

> The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be "similarly situated" to the named plaintiffs with respect to whether a FLSA violation has occurred. The court may send this notice after plaintiffs make a modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law.  At the second stage, the district court will, on a fuller record, determine whether a so-called "collective action" may go forward by determining whether the plaintiffs who have opted in are in fact "similarly situated" to the named plaintiffs. The action may be "de-certified" if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice.

*Id*. at 555 (internal citations and quotations omitted).  The first of these steps is typically referred to as "conditional certification."  *See Ruiz*, 93 F. Supp. 3d at 297.  "At the second step, typically the defendant moves for decertification, and the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs."  *Id*.  Similarly situated in this context means that the named plaintiff and the opt-in plaintiffs "share one or more similar questions of law or fact material to the disposition of their FLSA claims."  *Scott*, 954 F.3d at 521.

B.    **Defendants' Arguments**

Defendants make two arguments in support of their request for decertification: (1) that application of the retail or service exemption renders Named Plaintiffs and the opt-in plaintiffs not similarly situated; and (2) Named Plaintiffs lack standing with respect to any claims outside their dates of employment.

These arguments are easily disposed of.  As repeatedly explained above, the Court has determined as a matter of law that Real Agent Pro cannot establish that it is a retail or

service establishment.  The same legal analysis will apply to any of the other defendants who are ultimately determined to have employed Named Plaintiffs or the opt-in plaintiffs. Accordingly, Defendants cannot prevail with respect to this aspect of their decertification motion.

As to Defendants' standing argument, "[t]he FLSA . . . does not require that a plaintiff possess the 'same interest' and 'same injury' as members of a collective, as is required in Rule 23 class actions." *Douglas v. Anthem Prods., LLC*, No. 18-CV-5789 (VEC), 2019 WL 78988, at *4 (S.D.N.Y. Jan. 2, 2019) (citation omitted).  Instead, so long as the named plaintiff in an FLSA action has standing as to his or her own individual claim, a collective action can be certified as to other similarly situated employees.  *Id*.

The differences between a Rule 23 class action and an FLSA collective action explain why the standing analysis is distinct in each context.  Unlike in a Rule 23 class action, the named plaintiff in an FLSA collective action is not permitted to pursue claims on behalf of absent parties—instead, "a collective action brought under the FLSA is binding only upon those employees who affirmatively 'opt in' by giving consent in writing to become a party to the action." *Bowens v. Atl. Maint. Corp.*, 546 F. Supp. 2d 55, 81 (E.D.N.Y. 2008).  By becoming parties to the action, *see Zambrano v. Strategic Delivery Sols., LLC*, No. 15 CIV. 8410 (ER), 2021 WL 4460632, at *8 (S.D.N.Y. Sept. 28, 2021) ("Courts in this Circuit have . . . held that opt-in plaintiffs become parties to a FLSA action upon filing written consent, which renders the opt-in plaintiff party to the lawsuit through a separate action joined to the original lawsuit, which commences on the date written consent is filed." (quotation

omitted)), the opt-in plaintiffs provide the necessary standing with respect to their own individual claims.

Accordingly, Defendants' standing argument is misplaced. Instead, the relevant question is whether any difference in dates of employment renders Named Plaintiffs and the opt-in plaintiffs not similarly situated. As to Zoller, Defendants are correct that his employment apparently "ended before the relevant collective action period[.]" (Dkt. 89 at 6). However, the complaint in this action makes clear that it is Umbrino who "bring[s] this action on behalf of herself and all other similarly situated employees as authorized under 29 U.S.C. § 216(b)." (Dkt. 1 at ¶ 83; *see also id*. at ¶ 86 ("Named Plaintiff Umbrino should be permitted to bring this action as a collective action for and on behalf of those employees similarly situated pursuant to the opt-in provision of the FLSA, 29 U.S.C. § 216(b).")).

Umbrino was employed during the relevant collective action period. (*See* Dkt. 89 at 7). Further, while her employment allegedly ended in October of 2016, that does not mean that she is not similarly situated to the opt-in plaintiffs. *See Douglas*, 2019 WL 78988, at *4 ("Plaintiff's collective action need not be limited to employees who worked for Defendants prior to the time that Plaintiff terminated his employment.") (certifying collective action as to "all hourly employees who worked for Defendants between June 26, 2015 and the present" notwithstanding the fact that the named plaintiff ceased working for the defendants on August 28, 2017); *Viriri v. White Plains Hosp. Med. Ctr.*, 320 F.R.D. 344, 352 (S.D.N.Y. 2017) ("It is always the case in an FLSA collective action that, absent equitable tolling, the representative plaintiff who initially brings the action will have a different period of recoverable wages from the opt-in plaintiffs, who can recover, at most,

only wages from three years prior to their opting in. . . .  It makes little sense to hold that simply because there is no overlap between the representative plaintiff's recoverable wages and the opt-in plaintiff's recoverable wages that conditional certification is inappropriate.").

Umbrino and the opt-in plaintiffs are similarly situated, because they "share one or more similar questions of law or fact material to the disposition of their FLSA claims." *Scott*, 954 F.3d at 521.  Accordingly, Defendants' motion for decertification (Dkt. 72) is denied.

## **<u>CONCLUSION</u>**

For the reasons set forth above, Named Plaintiffs' motion for partial summary judgment (Dkt. 90) is granted in part and denied in part.  Specifically, the Court grants summary judgment to the extent that it finds that defendant Real Agent Pro, LLC f/k/a L.A.R.E. Marketing, LLC is not a retail or service establishment for purposes of the retail or service exemption and denies Named Plaintiffs' motion for partial summary judgment in all other respects.

The Court grants Named Plaintiffs' motion for class certification (Dkt. 68) to the extent that it certifies the following two classes under Federal Rule of Civil Procedure 23:

(a)  <u>Inside Sales Class</u>: all persons who performed insides sales work for defendants, including those who held job titles such as Business Development Specialist, Business Development Coordinator, Client Fulfillment Specialist, Client Fulfillment Coordinator, and Inside Sales Associate, at any time from July 26, 2013, through the entry of final judgment in this matter.

(b)  <u>Wage Theft Prevention Act Class</u>: all persons who worked for defendants at any time from July 26, 2013, through the entry of final judgment in this matter, and who did not receive written notice upon hire of the information set forth in New York Labor Law § 195(1)(a) and its associated regulations, or who did not receive annual written notice of the same prior to February 27, 2015.

However, the Court denies Named Plaintiffs' request for approval of their proposed notice.  Instead, the parties are directed to confer in good faith and make a joint submission to the Court proposing a single form of notice for the certified classes within 20 days of entry of this Decision and Order.  Within 15 days of entry of this Decision and Order, Defendants shall provide Plaintiffs' counsel in both hard copy and an Excel spreadsheet, a list containing the following information for each class member in a separate field: name, current or last known address, phone number, dates of employment, and e-mail address.

Defendants' motion for decertification of the FLSA collective action (Dkt. 72) is denied.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: February 15, 2022
        Rochester, New York